UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **KEITH KUNDE,** | : | Case No. 1:05CV1965 |
| | : | |
| Plaintiff, | : | **JUDGE KATHLEEN O'MALLEY** |
| | : | |
| v. | : | |
| | : | |
| **CITY OF INDEPENDENCE,** | : | |
| **OHIO, et al.,** | : | **ORDER** |
| | : | |
| Defendants. | : | |

This matter arises on *Defendants' Motion to Dismiss* (Doc. #3), in which Defendants seek an entry of judgment in their favor pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has filed an opposition (Doc. #6), and Defendants have replied (Doc. #7). This matter is now ripe for determination.

For the reasons articulated below, Defendants' motion is **GRANTED** and this case is **DISMISSED**.

**I.    BACKGROUND**[1]

Plaintiff Keith Kunde ("Kunde") has been a resident of Defendant City of Independence,

---

[1] As discussed below, all material facts alleged in the Complaint (Doc. #1) are viewed as true for purposes of this motion. *Summit Health, Ltd. v. Pinhas,* 500 U.S. 322, 325 (1991).

Ohio ("Independence") since 1984.  Defendant Fred P. Ramos ("Mayor Ramos" or "Ramos") is the Mayor of Independence as well as a former member of the Independence City Council.  Defendants Patricia Wisnieski ("Wisnieski"), Vernon Blaze ("Blaze"), Charles Cichocki ("Cichocki"), David Grendel ("Grendel"), George Klepacz ("Klepacz"), Barbara Ann Mack ("Mack"), and James F. Riley ("Riley") (collectively "Council Members") are all members of the Independence City Council.[2]

On June 9, 1998, the Independence City Council voted 7-0 to enact proposed Ordinance 1998-23 into law, codifying the ordinance as Section 618.24 of the Codified Ordinances of Independence ("Section 618.24").  Defendants Ramos (then, a council member), Cichocki, Riley, and Wisnieski were on the Independence City Council at the time and voted for the enactment of Section 618.24.  Section 618.24, as enacted, made it a crime to provide food for deer and other wild animals if the food was placed "in close proximity" to the exterior of a "person's home."  According to the Complaint, Section 618.24 was enacted in response to concerns of property damage, rabies, and other problems arising from attracting wild animals to populated areas.  On February 2, 2005, Kunde "walked out at least 150 feet from the exterior of his home . . . in order to place corn so that area deer would have food . . . ."  On February 3, 2005, Kunde was cited for a First-Degree Misdemeanor for violating Section 618.24.  The language of the ordinance, however, only subjected first time offenders to a Minor Misdemeanor, which carries a lighter penalty than a First-Degree Misdemeanor.

On or about February 23, 2005, Kunde appeared in Independence's Mayor's Court before Mayor Ramos (acting as the chief judicial officer) in connection with his alleged violation of Section

---

[2] Independence, Mayor Ramos, and the Council Members are collectively referred to as "Defendants."

2

618.24. Mayor Ramos advised Kunde that he was being charged with a First-Degree Misdemeanor, and, as such, was potentially subject to a $1,500 fine.[3] Believing that he faced incarceration for up to six months and a $1,500 fine, Kunde entered a plea of not guilty.

On or about March 9, 2005, Defendants were informed that Kunde intended to challenge the constitutionality of Section 618.24 in the context of his criminal proceeding. On or about April 12, 2005, Defendants proposed amending Section 618.24. Oral arguments in Kunde's case concerning the constitutionality of Section 618.24 were slated for April 21, 2005. On or about that date, however, Defendants dropped the case against Kunde and also amended Section 618.24. Kunde, accordingly, was never convicted of any offense and received no fine and no penalty.

On August 10, 2005, Kunde filed his Complaint in this case, seeking a declaration that Defendants' acts constitute violations of the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §§ 1983 and 1985. In addition to declaratory relief, Kunde further seeks injunctive relief, compensatory and punitive damages, and costs and reasonable fees. The Court now turns to the merits of Defendants' motion to dismiss Kunde's Complaint.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true, and construe those allegations in a light most favorable to the plaintiff. *Summit Health, Ltd. v. Pinhas,* 500 U.S. 322, 325 (1991); *see also Dana Corp. v. Blue Cross & Blue Shield Mut.*, 900 F.2d 882, 885 (6th Cir. 1990). The Court need not, however, accept as true a legal conclusion couched as a factual allegation. *Papasan v.*

---

[3] Kunde acknowledges that the official police report indicated that he was being charged with a First-Degree Misdemeanor.

*Allain*, 478 U.S. 265, 286 (1986). A well-pleaded allegation is one that alleges specific facts and does not merely rely upon conclusory statements. *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988). A complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *In re Delorean Motor Co.,* 991 F.2d 1236, 1240. (6th Cir. 1993). The Court is to dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### III. ANALYSIS

Kunde asserts two claims against Defendants: (1) a claim under 42 U.S.C. § 1983 ("Section 1983") arising from the alleged violation of Kunde's First Amendment right to free expression and Fourteenth Amendment right to due process; and (2) a claim under 42 U.S.C. § 1985 ("Section 1985") for conspiracy to violate those same constitutional rights. Kunde brings this action against Mayor Ramos and the Council Members in both their individual and official capacities. As to the Section 1983 claim, Kunde first asserts that Defendants violated his First Amendment right to free expression when they charged him with a First-Degree Misdemeanor, a penalty not permitted under Section 618.24, as a form of retaliation for Kunde "protesting" Section 618.24 (by violating it). Kunde also argues that Defendants violated his Fourteenth Amendment due process rights by prosecuting him for violating Section 618.24, despite knowing that Section 618.24 was unconstitutionally vague.[4] In his second claim, Kunde asserts that the foregoing acts of Defendants, depriving him of his First and Fourteenth Amendment rights, further constitute a conspiracy under

---

[4] Kunde does <u>not</u> assert that he was cited without probable cause or that the proceedings pursuant to that citation were undertaken without cause to do so.

Section 1985.

In response to Kunde's assertions, Defendants argue that they are entitled to either absolute or qualified immunity concerning Kunde's Section 1983 claim against them in their individual capacities. Defendants further argue that Kunde's Section 1983 claim against them in their official capacities fails because Kunde has not been deprived of any constitutional right. In addition, Defendants argue that, because Kunde has failed to show that he was deprived of a constitutional right under Section 1983, his Section 1985 conspiracy claim predicated on the same allegations also must fail. For the reasons outlined below, the Defendants' arguments are well-taken.

### A. Section 1983 Claim

Section 1983 provides for a private right of action against any person who, under color of state law, violates another person's federal rights, including, of course, rights secured under the Constitution. *See* 42 U.S.C. § 1983. Accordingly, "[i]n order to state a claim under Section 1983, it must be established that (1) the conduct in controversy was committed by a person acting under color of law, and (2) the conduct deprived the plaintiff of a federal right, either constitutional or statutory." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (citing *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 930 (1982). As discussed above, Kunde brings his claim against Mayor Ramos and Council Members in both their individual and official capacities.

#### 1. Individual Capacities

As to Kunde's Section 1983 claim against the individual Defendants in their individual capacities, Mayor Ramos and the Council Members argue that Kunde's claim is barred because they

are entitled to absolute immunity, or, alternatively, that they are entitled to qualified immunity.[5] Mayor Ramos and the Council Members argue that they are protected by absolute legislative immunity for their roles in enacting Section 618.24, and Mayor Ramos argues that he is entitled to absolute judicial immunity for his role in presiding over Kunde's case in Independence's Mayor's Court.

First, Mayor Ramos and the Council Members are correct that they are entitled to absolute legislative immunity regarding their participation in the passage of Section 618.24. "[L]ocal legislators are protected by absolute immunity when they act in their legislative capacities." *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). In that regard, the Sixth Circuit has determined that passing an ordinance is an example of an action taken in official legislative capacity. *See id.* Accordingly, Mayor Ramos and the Council Members clearly were acting in a legislative capacity when they enacted Section 618.24. Indeed, Kunde does not argue otherwise in his opposition to Defendants' motion to dismiss.

To the extent that Kunde bases his claim on the premise that prosecution was pursued wrongfully against him under an unconstitutional ordinance, his argument fails. Indeed, Kunde ultimately was never punished for violating Section 618.24, as the case against him was dismissed in his favor.[6] Moreover, Section 618.24 has never been held to be unconstitutional; Kunde's mere

---

[5] Immunity defenses may be properly raised in motions to dismiss. *See Collyer v. Darling,* 98 F.3d 211, 222 (6th Cir. 1996).

[6] Although not addressed by either of the parties, because Kunde was not deprived of any constitutional right as a result of his prosecution, it is questionable whether he even has standing to bring these claims. *See Allen v. Wright*, 468 U.S. 737, 751 (1984) (indicating that, as a requirement of Article III standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."). Even if Kunde does

6

assertion that Section 618.24 is unconstitutional does not make it so. Based on the foregoing, Mayor Ramos and the Council Members are entitled to absolute legislative immunity.

Second, to the extent Kunde's Section 1983 claim is asserted against Mayor Ramos for his actions as the chief judicial officer of Independence's Mayor's Court, Mayor Ramos is entitled to absolute judicial immunity. "Judges are generally absolutely immune from civil suits for money damages, including § 1983 suits." *DePiero v. City of Macedonia*, 180 F.3d 770, 783 (6th Cir. 1999) (citations omitted). Absolute judicial immunity also applies to a judge of a mayor's court. *See id*. "[A]bsolute judicial immunity is overcome only in two situations. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id*. at 784. With respect to the first situation, "the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).

Here, both prongs of the test laid out above in *Stump* have been satisfied. First, presiding over a hearing, and informing Kunde of the crime he had been charged with and the potential penalties he faced for violating Section 618.24, are clearly functions normally performed by a judge. Furthermore, Mayor Ramos is entitled to absolute judicial immunity even if he mistakenly informed Kunde that he was being charged with a First-Degree Misdemeanor and faced up to a $1,500 fine for violating Section 618.24. Indeed, the Supreme Court has stated that "[a] judge will not be

---

have standing to assert his claims, however, the Court concludes that his Complaint must be dismissed pursuant to Rule 12(b)(6).

deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority . . . ." *Id.* at 356. As to the second prong, Kunde clearly dealt with Mayor Ramos in his judicial capacity, coming before him based on his violation of Section 618.24.[7] In light of the foregoing, the actions of Mayor Ramos were judicial actions.

Finally, the second situation in which absolute judicial immunity is overcome (i.e., lack of jurisdiction) is also not applicable here. Mayor Ramos clearly had jurisdiction to preside over the prosecution of Kunde for violating Section 618.24. The relevant Ohio statute provides that, "the mayor of the municipal corporation has jurisdiction . . . to hear and determine any prosecution for the violation of an ordinance of the municipal corporation . . . ." Ohio Rev. Code Ann. §1905.01.

As it has been determined that the allegations against Defendants only concern acts in which they are already protected by absolute immunity, the Court does not address Defendants' alternative argument that they are entitled to qualified immunity.

### 2. Official Capacities

Kunde's Section 1983 claim against the Defendants in their official capacities also fails. A Section 1983 claim against a public official in his or her official capacity is treated as a claim against the municipality itself (i.e., Independence). *Wallace v. City of Shelby*, 968 F.Supp. 1204, 1208 (N.D. Ohio. 1997). The "touchstone of [a] § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution . . . ." *Monell v. New York City Dept. Of Social Servs.*, 436 U.S. 658, 690 (1978). Here, Kunde does not allege that

---

[7] There is no merit to Kunde's contention that Mayor Ramos stepped outside of his judicial capacity and acted as a prosecutor when he informed Kunde of the potential penalty he faced for violating Section 618.24. Simply informing a defendant of a potential penalty, even mistakenly, does not transform the judge's role into a prosecutorial one.

an official policy existed that was responsible for depriving him of any rights protected by the Constitution. For example, Kunde does not allege that Independence officials have a policy of threatening protesting defendants with penalties that are harsher than the ordinances allow or, similarly, a policy of prosecuting violators under ordinances they know to be unconstitutionally vague.[8]

Even if the Court finds that Kunde has alleged that some official policy of Independence caused the deprivation of his rights, his claim still fails because he has not actually been deprived of any constitutional right. Indeed, Kunde admittedly spoke out against Section 618.24, thereby exercising his First Amendment right of expression. Furthermore, Kunde's argument that Defendants retaliated against him for voicing his opposition to Section 618.24 is without merit; he admittedly violated Section 618.24 and was prosecuted for that violation, not for his opposition to Section 618.24. To the extent he contends that the retaliation took the form of threatening him with enhanced penalties, as noted above, no harm flowed from that alleged threat.[9]

As to Kunde's assertion that Defendants violated his Fourteenth Amendment due process rights when they prosecuted him under an ordinance they allegedly knew to be unconstitutional, the Court reiterates that Kunde was never actually convicted for violating Section 618.24. The dismissal

---

[8]     While the Mayor and City Council are clearly "policy-makers" within the meaning of Section 1983, Kunde does not assert that the Council members participated in Kunde's prosecution and, to the extent Kunde asserts the Mayor made a policy decision to misinform Kunde regarding the penalties he faced, no harm flowed from the alleged policy choice.

[9]     Defendants assert that any misstatement of the penalties associated with a violation of Section 618.24 was inadvertent, based on a mistaken interpretation of the ordinance. The Court need not resolve those issues and, indeed, should not attempt to do so in the procedural context presented here. Whether mistaken or purposeful, the Court finds the statement immaterial.

of the claims against him occurred, moreover, after Kunde actually was afforded the opportunity to plead not guilty to the charges against him <u>and</u> to challenge the constitutionality of the ordinance under which he was charged. Thus, Kunde <u>was</u> afforded all the process to which he was due in connection with the charges against him. Finally, even if it were true that Section 618.24 was unconstitutional as originally drafted, "a prosecution under a presumptively valid municipal ordinance, later determined to be invalid, does not, of itself, deprive the person prosecuted of any liberty interest recognized by our Constitution. The prosecution itself is the observance of process due the accused." *Richardson v. City of South Euclid*, 904 F.2d 1050, 1053 (6th Cir. 1990). In short, Kunde has not alleged any facts indicating that he was deprived of his Fourteenth Amendment due process rights.[10]

---

[10] To the extent Kunde relies on this Court's decision in *Rose v. Village of Peninsula*, 875 F.Supp. 442 (N.D. Ohio 1995), his reliance is misplaced. The plaintiff in *Rose* was actually found guilty and fined in Mayor's Court. *Id.* at 445. Although the charges in *Rose* eventually were dismissed by the municipality during the pendency of Rose's appeal, the mayor-judge in *Rose* nonetheless reached the ultimate conclusion of guilt and imposed a fine. *Id*. at 445. Here, Kunde was neither convicted nor fined, as his case was dismissed while pending in Mayor's Court. That fact is significant given that the constitutional defect found in *Rose* was that the mayor-judge, being responsible for the municipality's financial condition as mayor and imposing fines as a judge that would increase revenue, faced an impermissible conflict of interest when adjudicating Rose's case. *Id.* at 452-53. In the present case, Mayor Ramos was never required to reach the ultimate conclusion of Kunde's guilt or impose a fine, and, therefore, was never actually faced with the same conflict. That reason, among others (such as the nature of the charges at issue), distinguishes the present case from *Rose* (as well as raises doubts of Kunde's standing to even make such a challenge, *see infra*, n. 6).

### B. Section 1985 Claim[11]

Kunde's Section 1985 claim also fails for two reasons. First, a claim under Section 1985(3) requires that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340, 344-47 (5th Cir. 1981) (explaining that the language of Section 1985 originated from the Klu Klux Klan Act of 1871, 17 Stat. 13.) Although the Sixth Circuit has found that Section 1985(3) "extends beyond the realm of purely racial animus," *see Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 224 (6th Cir. 1991), Kunde has not alleged that Defendants acted with <u>any</u> discriminatory, class-based animus, racial or otherwise. Indeed, Kunde has not alleged that he is part of any class of citizens for purposes of this lawsuit, and certainly not one protected by Section 1985(3). *See id.* ("[T]he class of individuals protected by [Section 1985(3)] are those so-called 'discrete and insular' minorities that receive special protection under the Equal Protection Clause because of inherent personal characteristics.") (quoting *Browder v. Tipton*, 630 F.2d 1149, 1150 (6th Cir. 1980)). Kunde, therefore, has failed to state a claim for relief under Section 1985 for that reason alone.

Second, as Kunde's Section 1983 claim fails, his Section 1985 claim must also fail because "the absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations." *See Conrad v. Mich. Dep't. of Corr.*, No. 1:91-cv-99, 1992 WL 547168, at *3 (W.D. Mich. Oct. 5, 1992) (quoting *Caldeira v. County of Kauai.*, 866 F.2d 1175,

---

[11] Although Kunde's Complaint does not specify on which subsection of Section 1985 his Complaint is based, the Court assumes that it is based on Section 1985(3) because of the language Kunde uses in his Complaint - "conspiracy to deprive a citizen of the United States in the exercise of rights insured under the First and Fourteenth Amendments to the Constitution of the United States."

1182 (9th Cir.1989), *cert. denied*, 493 U.S. 817 (1989)). Here, Kunde bases his Section 1985 claim on the exact same allegations as his Section 1983 claim. As discussed above, Kunde failed to adequately allege that he was deprived of any constitutional right for purposes of pleading a Section 1983 claim. As a necessary result, no claim for conspiracy under Section 1985 can lie in this case.

### III. CONCLUSION

For the foregoing reasons, *Defendants' Motion to Dismiss* (Doc. #3) is **GRANTED**. Plaintiff's case is, therefore, **DISMISSED**.

**IT IS SO ORDERED.**

                                      **s/Kathleen M. O'Malley**
                                      **KATHLEEN McDONALD O'MALLEY**
                                      **UNITED STATES DISTRICT JUDGE**

**Dated: March 17, 2006**